UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KATHLEEN MARILYN ELLIOTT,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>Defendant. | CASE NO. 12-cv-05081 RJB<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: December 21, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 12, 16, 17).

While the ALJ correctly noted that plaintiff is highly intelligent and was formerly capable of working as an accountant, there was also significant evidence in the record that she suffers from ongoing mental impairments and that she was incapable of being

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 1

gainfully employed.  The ALJ chose to discount the opinions of all of her treating and examining physicians and mental health counselor, and instead relied on the conclusions of two reviewing State psychologists, who never met plaintiff and who apparently reviewed an incomplete record.

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record for his failure to credit the opinions of examining and treating doctors regarding plaintiff's functional limitations.  For these reasons, and based on the relevant record, the Court recommends that this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, KATHLEEN MARILYN ELLIOTT, was 42 years old on her alleged disability onset date and 47 years old on the date her insured status for disability benefits expired (Tr. 131).  She graduated from college with a four-year degree (Tr. 153) and worked previously as a comptroller/accountant, a cost accountant, and a project/budget accountant (Tr. 21, 67-68).  Plaintiff's mental health history includes reports of abusive developmental history from early childhood through age 20 (Tr. 194).  She had a family history of bipolar disorder.  In 2002, she received a neuropsychological examination by Bryon Goldberg, Ph.D. a clinical neuropsychologist (Tr. 194-99).  Dr. Goldberg noted, among other things, that plaintiff had problems with memory, depression and anxiety (Tr. 198; *see also* Tr. 450).  He also found that her emotional functioning resulted in a moderate to severe level of depressive and anxiety symptoms and that she had met the

criteria for Major Depressive Disorder (Tr. 198).  Over the course of the following years, and apparently as a result of these mental impairments, plaintiff lost her job and received ongoing psychiatric treatment.  Her treating psychiatrist was Mary Winkler, M.D., a board certified psychiatrist.  Plaintiff received mental health therapy from Linda J. Williams, MSW, LCSW, a licensed clinical social worker (Tr. 450).  Plaintiff received a variety of medications, which sometimes stabilized her, but often led to a number of side effects.  She was unable to maintain a stable, ongoing medication regimen due to her sensitivity to various medications (Tr. 448).  As a result, according to Dr. Winkler, plaintiff had "neurovegetative symptoms and chronic suicidal ideations.  Her cognitive function is often impaired, with both long- and short-term memory deficits, as well as word retrieval difficulties.  Her problem-solving skills are often quite limited and do involve impulsivity.  Her judgment is oftentimes quite impaired, and she has limited insight" (*id.*).

In October of 2009, some, but not all, of her records were forwarded to Washington State Medical Consultant, psychologist John F. Robinson, Ph.D., who was asked to review the records and determine her mental residual functional capacity (*see* Tr. 202 – 23).[1]  Dr. Robinson never met plaintiff, but based on his review of some of her records, concluded that although she had moderate to severe levels of depression and anxiety symptoms, in his opinion, these symptoms could be treated with medication and

---

[1] It is unclear from the record exactly what records Dr. Robinson reviewed, but in light of the observations he made and the date of his report, it is clear that he did not have all of the records that were provided to the ALJ at the time of the hearing.  *See infra*, pages 10-12.

she was not precluded from functioning in a work activity (Tr. 218.) These conclusions were reviewed by another Washington State Medical Consultant, psychologist Thomas Clifford, PhD., who issued a one-sentence "case analysis" affirming Dr. Robinson's conclusions, without elaboration (Tr. 401).

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on August 10, 2009, alleging disability since June 13, 2002 (Tr. 131-37, 148). Her application was denied initially (Tr. 78-80) and on reconsideration (Tr. 82-83). Her requested hearing was held before Administrative Law Judge Larry Kennedy ("the ALJ") on February 17, 2011, when plaintiff appeared and testified (Tr. 28-75). A vocational expert also testified (Tr. 67-72). The ALJ issued a decision finding plaintiff not disabled on April 15, 2011 (Tr. 7-27). On December 19, 2011 the Appeals Council denied plaintiff's request for review making the ALJ's decision to deny benefits the Commissioner's final decision (Tr. 1-6). *See* 20 CFR §404.981.

In February of 2012, plaintiff filed a complaint in this court seeking judicial review of the ALJ's written decision (*see* ECF No. 3). On April 24, 2012, defendant filed the sealed Administrative Record in this matter ("Tr.") (*see* ECF No. 9).

In her opening brief, plaintiff challenges: (1) the ALJ's review of plaintiff's medical evidence; (2) the ALJ's review of plaintiff's credibility; (3) the ALJ's failure to call a medical expert to testify at the hearing; and (4) the ALJ's failure to adopt the vocational expert's opinion that a person with plaintiff's alleged limitations could not sustain work (*see* ECF No. 12, pp. 2-4).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion

when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

1. <u>The ALJ failed to review properly the medical evidence.</u>

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, supra, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).

According to Social Security Ruling ("SSR") 96-8p, a residual functional capacity assessment by the ALJ "must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5 at *20.

In this case, the ALJ gave more weight to the evidence from non-treating, non-examining state doctors rather than to the treating and examining doctors. Treating doctors' opinions generally are granted more weight because they have a "longitudinal picture of the patient's impairments." *See* 20 CFR §404.927(d)(1). Here, all of the persons who treated or examined Ms. Elliott noted that she had significant impairments that would limit her functionality. For instance, Dr. Winkler, who had treated Ms. Elliott on more than one hundred occasions (*see* Tr. 224-375), noted that her "ongoing psychiatric illnesses" are chronic, that her medication management was difficult to maintain and that she needed psychotherapy "to stabilize her functioning at a basic level with home duties and parenting" (Tr. 448). Dr. Winkler found that, based on her limited functional capacity, plaintiff was not capable of outside employment, including part time employment (*id.*).

Similarly, the neuropsychologist who first examined plaintiff, Myron Goldberg, Ph.D. noted that "[o]ngoing, significant psychiatric difficulties are indicated and are thought to account for the cognitive difficulties that she notices in her everyday life, as both depression and anxiety can interfere with cognitive functioning" (Tr. 198). He noted that she was having difficulty with her medications and that a possible change in her medications was indicated (Tr. 199). Dr. Goldberg opined that plaintiff's prognosis was "dependent upon improvement of her emotional status with treatment" (*see* Tr. 198). He concluded that her psychological condition "could pose a barrier to fulltime status" (*id.*).

Despite repeated changes in her medication regimen, her counselor, Linda J. Williams, MSW, LCSW, who saw plaintiff consistently over a period of seven years following plaintiff's psychiatric hospitalization, concluded that plaintiff had difficulty tolerating the side effects from a number of medications for her bi-polar II disorder (Tr. 449). Ms. Williams noted her observations of plaintiff's presentation, including plaintiff's severe mood swings, "from mania with rapid speech and hypersexuality to deep melancholic depressions resulting in oversleeping, chronic suicidal ideation, and psychotic-like self mutilation fantasies" (Tr. 449). Ms. Williams similarly concluded that "It is my observation that routine work demands will likely exceed her capacity to perform. I do not see her as having the emotional stamina or stabilized mood to return to the workplace" (Tr 450).

Instead of relying on the conclusion of examining and treating doctors or plaintiff's counselor, the ALJ discounted all of these opinions with very little explanation

other than to note that at times claimant was "well groomed, attentive, able to sit quietly, had mildly reactive effect, had no suicidal ideations, and had linear thought process" (Tr. 19). While the ALJ cited occasions in the record that included notations by the health care providers regarding these observations, the ALJ also ignored significant medical evidence to the contrary.  A review of the treatment records indicates that because of plaintiff's bipolar disorder, there were times when her symptoms were mild and other times, unpredictably, when they became severe.  For instance, Dr. Winkler noted that over the course of 100 treatment sessions and more than eight years of observations, that she went through a number of manic/depressive cycles (Tr. 299-339); her mood was not improved with increases in medication (Tr. 293); she had limited energy, including falling asleep while driving (Tr. 272); and she experienced a number of symptoms including intermittent hypomania (Tr. 268), severe insomnia blurred vision (Tr. 274) and suicidal ideation (Tr. 237).  By the very nature of her disease, she would experience significant highs and lows.  At times she was more stable and her thoughts were more organized, but then she would fall into a severe depressive state (Tr. 260).  All of these citations to the record directly contradict the ALJ's summation of Dr. Winkler's observations (*see* Tr. 17-19).

  For the reasons stated, and based on the relevant record, the Court concludes that the ALJ's findings regarding Dr. Winkler's opinions are not based on substantial evidence in the record as a whole.  While the Court has made specific references to Dr. Winkler's opinions, the Court has made similar observations with regard to the ALJ's handling of the opinions of plaintiff's other health care providers and her counselor.

Instead of giving controlling weight to these opinions, the ALJ gave significant weight to the opinions of John Robertson, Ph.D. and Thomas Clifford, Ph.D., who are state agency psychological consultants (Tr. 19). These consultants reviewed plaintiff's records and never treated or examined plaintiff. According to plaintiff, the doctors analyzed only one medical report in the record prepared by Myron Goldberg, Ph.D. The report does not identify specifically what records these consultants reviewed (*see* Tr. 202 – 23). Although the "Case Development Sheet" indicates that the consultants had records from Dr. Goldberg, Dr. Winkler, and counselor Williams, it is unclear which records they reviewed and whether or not they had a complete record (*see* Tr. 220-21). What is clear from a review of those records, is that these consultants either didn't have all the records or didn't read them. Otherwise they would not have made some of the observations that they did regarding plaintiff's condition.

For instance, they appeared to have found that there was no indication that plaintiff had any mood disturbance, including no "depressive syndrome", characterized by, among other things, sleep disturbance, decreased energy, and thoughts of suicide (Tr. 205). Yet, as noted above, the record from her health care providers is replete with such references.

Despite these many references in the record to plaintiff's severe symptoms and difficulties, the state psychologists noted only that plaintiff's cognitive functioning revealed "no indication of difficulties in any area of cognitive functioning" during one examination by Dr. Goldberg (Tr. 218). However, the record reflects that Dr. Goldberg also noted that she had ongoing significant psychiatric difficulties that he believed could

account for her experienced lapses in cognitive functioning (Tr. 198). He concluded that her psychiatric status "could pose a barrier to full time status" (Tr. 199). These conclusions by Dr. Goldberg do not appear to have been given due consideration by the reviewing consultants. Because of a lack of detail in these reviewing consultants' analysis, it is unclear how they reached their conclusions, and it is further unclear how the ALJ could have relied on these sparse conclusions without more substantive support.

Regarding state agency medical consultants, the ALJ is "required to consider as opinion evidence" their findings, and also is "required to explain in his decision the weight given to such opinions." *Sawyer v. Astrue*, 303 Fed. Appx. 453, 455, 2008 U.S. App. LEXIS 27247 at **3 (9th Cir. 2008) (citations omitted) (unpublished opinion). According to Social Security Ruling (hereinafter "SSR") 96-6p, "[a]dministrative law judges . . . . may not ignore the[] opinions [of state agency medical and psychological consultants] and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 WL 374180 at *2. Likewise, SSR 96-5p, provides that State agency "medical and psychological consultant findings about the nature and severity of an individual's impairment(s), including any RFC assessments, become opinion evidence," and "administrative law judges . . . . must address the[se] opinions in their decisions." SSR 96-5p, 1996 WL 374183 at *6.

The ALJ gave significant weight to the state reviewing psychologists' opinion (Tr. 19). However, the ALJ did not support this finding with an analysis as to why he did so. Certainly, a review of the records does not reveal the answer. This constitutes legal error.

It also should be noted that the ALJ misquoted the record and attributed statements to "Sujata Poisson, M.D." that actually should have been attributed to Myron Goldberg, Ph.D. (*see* Tr. 13). This error in attribution is indicative of the ALJ's failure to provide a careful medical analysis of over 300 pages of medical records.

For these reasons, the Court concludes that the finding by the ALJ that Dr. Winkler's opinions and the opinions of plaintiff's other health care providers are accorded "no weight" or "little weight", and the ALJ's conclusion that the state reviewers' opinions are accorded "significant weight" (*see* Tr. 19-22) are not based on substantial evidence in the record as a whole. The medical record should be evaluated anew following remand of this matter.

2. <u>This matter should be remanded for further administrative proceedings</u>.

The Ninth Circuit has put forth a "test for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178, 2000 U.S. App. LEXIS 38646 at **17 (9th Cir. 2000). It is appropriate where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen*, 80 F.3d at 1292. There is a large volume of medical and other evidence, and the record is not conclusive.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of plaintiff's residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

Because the ALJ's consideration of the medical evidence clearly requires re-evaluation, there is no need to address fully the remaining issues in plaintiff's Opening Brief. However, the Court notes that the medical evidence was not evaluated properly, and a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). The entire record should be evaluated anew.

## CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

1 | 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for

2 | **PLAINTIFF** and the case should be closed.

3 | Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4 | fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

5 | Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

6 | purposes of de novo review by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).

7 | Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

8 | matter for consideration on December 21, 2012, as noted in the caption.

9 | Dated this 26th day of November, 2012.

*(signature)*

J. Richard Creatura
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 15